UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | : | |
| | : | |
| -v- | | 20 Cr. 064 (AMD) |
| | : | |
| JAMES ALBERT, | | |
| | : | |
| Defendant. | | |

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

# **MEMORANDUM OF LAW IN SUPPORT OF JAMES ALBERT'S MOTION FOR A JUDGMENT OF ACQUITTAL**

ANTHONY CECUTTI
217 Broadway, Suite 707
New York, New York 10007
Ph: (212) 619-3730

KESTINE THIELE
217 Broadway, Suite 707
New York, New York 10007
Ph: (212) 542-3860

*Attorneys for James Albert*

TO:    BREON PEACE, Esq.
United States Attorney
Eastern District of New York
271 Cadman Plaza E
Brooklyn, New York 11201
Attn:   AUSA Laura Zuckerwise
        AUSA Joy Lurinsky
        AUSA Andrew Reich
        AUSA Ryan Harris

## PRELIMINARY STATEMENT

James Albert was charged with one count of conspiracy to violate the Travel Act and one count of conspiracy to distribute and possess with intent to distribute a controlled substance, in a multi-count, multi-defendant indictment dated February 11, 2020. Count Three charged Mr. Albert with conspiracy to violate the Travel Act, in violation of 18 U.S.C. § 371. Count Four charged Mr. Albert with conspiracy to distribute or possess with intent to distribute marijuana and buprenorphine, in violation of 21 U.S.C. § 846.

On December 1, 2022, a jury found Mr. Albert guilty of Counts Three and Four. On December 5, 2022, the Court adopted the parties' proposed post-trial motion schedule with defense motions due January 6, 2023, the Government's response due February 6, 2023, and the defense reply, if any, due February 20, 2023.

Mr. Albert respectfully moves the Court to enter an Order for a judgment of acquittal on Counts Three and Four pursuant to Rule 29 of the Federal Rules of Criminal Procedure.

## STATEMENT OF FACTS

From February 2019 and June 2019, Mr. Albert was incarcerated on an unrelated state case in housing unit 7B at the George R. Vierno Center ("GRVC") on Rikers Island. During this time, then-Corrections Officer ("CO") Patrick Legerme worked "meal relief" on Mr. Albert's unit, relieving other COs of their posts for about an hour while they took lunch. *See* Tr. 79-81. CO Karin Robinson also worked on 7B at the time.

From February 2019 to June 2019, Mr. Albert was married to Celena Burgess, who he had met and maintained an on-and-off, romantic relationship with since 1995. Tr. 161-62: 17-25, 1-25. During Mr. Albert's incarceration, Ms. Burgess spoke to him on the phone daily and

visited him weekly. Tr. 196-97: 22-25, 1-3. When she visited him at Rikers, she commonly brought him packages that included clothes, newspapers, and drawing books. Tr. 197: 4-18. Mr. Albert was a talented artist who sold holiday cards, birthday cards, and family portraits for a decent amount of money to other inmates at Rikers. Tr. 203: 12-24. Ms. Burgess would help facilitate the sale of these pieces of art using her CashApp account. Tr. 203-04: 25, 1-8. Mr. Albert also owed debts to people in the street. Tr. 204: 14-20. Ms. Burgess handled those payments through her personal Cash App account. *Id.* Before his incarceration at Rikers, he worked for a nonprofit called GMACC, and he continued his work with that organization while incarcerated in 2019. *See* Tr. 204: 21-23.

Mr. Albert also kept in regular contact with a number of friends and acquaintances via the jail phones. Two of those associates were alleged co-conspirators Trevor Bodden and Jonathan Medina. On these calls, they often spoke in confusing, vague language; though, they never explicitly spoke about drugs, or contraband of any kind. *See* GX 200-236. They did seem to be conducting some sort of business that involved financial transactions with other inmates at Rikers and perhaps, people on the outside.

Between March 2019 and May 2019, CO Robinson received approximately $6,000 from Ms. Burgess's Cash App account. Tr. 408: 5-18. Rikers video surveillance showed Mr. Albert speaking to CO Robinson on a number of occasions and of CO Robinson handing Mr. Albert what appeared to be white bed sheets or towels in front of other COs and inmates at GRVC. In June 2019, CO Legerme received $1,500 from Ms. Burgess's Cash App account. Tr. 382-83: 25, 1-2. There are no phone calls or video surveillance related to any such transaction.

A. **Government Case**

The Government's evidence was comprised of:

1. Testimony of co-conspirator Patrick Legerme;

2. Testimony of co-conspirator Celena Burgess;

3. Testimony of expert and Investigator Andrew Walker, Department of Corrections ("DOC") Correction Intelligence Bureau ("CIB");

4. Testimony of Captain Ali Fayad, DOC Department of Investigation ("DOI"); and

5. Testimony of FBI Special Agent Daniel White.

The Government and defense also entered into evidence, by stipulation as to the authenticity, *inter alia*, photos and videos captured from Rikers Island Correctional Facility ("Rikers"), jail calls recorded through the Rikers Securus platform, unindicted co-conspirator Karin Robinson's Department of Motor Vehicle registration records, cell phone records, Cash App records, bank statements, and various other New York City DOC records. Mr. Albert entered into evidence copies of drawings sent by him to Ms. Burgess and two resumes for Investigator Walker. *See* Gov't Exhibits GX 100-108, 200-237, 300-307, 400-402, 500-512, 600-607, 700-715; *see* DX A-E.

### B. Defense Case

Mr. Albert called no witnesses at trial.

## LEGAL STANDARD

Federal Rule of Criminal Procedure 29(a) requires a court to "enter a judgment of acquittal on any offense for which the evidence is insufficient to sustain a conviction." "The

critical inquiry on review of the sufficiency of the evidence to support a criminal conviction must be not simply to determine whether the jury was properly instructed, but to determine whether the record evidence could reasonably support a finding of guilt beyond a reasonable doubt." *Jackson v. Virginia*, 443 U.S. 307, 318 (1979). Thus, the Court must determine, after "considering all of the evidence, direct and circumstantial, that 'no rational trier of fact could have found the defendant guilty beyond a reasonable doubt.'" *United States v. Eppolito*, 534 F.3d 25, 45 (2d Cir. 2008) (quoting *United States v. Jackson*, 335 F.3d 170, 180 (2d Cir. 2003)). The Court "must view the evidence in the light most favorable to the Government, crediting every inference that could have been drawn in the Government's favor, and deferring the jury's assessment of witness credibility and its assessment of the weight of the evidence." *United States v. Coplan*, 703 F.3d 46, 62 (2d Cir. 2012) (quoting *United States v. Chavez*, 549 F.3d 119, 124 (2d Cir. 2008)). A jury's guilty verdict may be sustained only "if there is substantial evidence" to support it, *United States v. Mulheren*, 938 F.2d 364, 368 (2d Cir. 1991) (emphasis in original) (citations omitted), and a "mere modicum" will not do. *Jackson*, 443 U.S. at 320.

Although it is generally left to the jury to determine the credibility of witnesses, weigh the evidence, and draw justifiable inferences from prove facts, *United States v. Taylor*, 464 F.2d 240, 243 (2d Cir. 1971), "juries do not have carte blanche," *United States v. Blasini-Lluberas*, 169 F.3d 57, 62 (1st Cir. 1999), and "[t]he jury may not be permitted to conjecture merely, or to conclude upon pure speculation or from passion, prejudice or sympathy," *Taylor*, 464 F.2d at 243. Accordingly, on a Rule 29 motion, the Court is required to "take a hard look at the record and to reject those evidentiary interpretations and illations that are unreasonable, insupportable, or overly speculative." *Blasini-Lluberas*, 169 F.3d at 62 (internal citations and quotation marks omitted); *see also United States v. Lorenzo*, 534 F.3d 153, 159 (2d Cir. 2008) ("specious

inferences are not indulged, because it would not satisfy the Constitution to have a jury determine that the defendant is probably guilty" (internal citation, quotation marks, and alterations omitted)).

In making a sufficiency determination, the Court is "obligated to 'consider the evidence presented at trial in its totality, not in isolation.'" *United States v. Kapelioujnyj*, 547 F.3d 149, 154 (2d Cir. 2008) (quoting *United States v. Zhou*, 428 F.3d 361, 369-70 (2d Cir. 2005)). "If the evidence is such that reasonable jurors must necessarily have ... a [reasonable] doubt, the judge must require acquittal, because no other result is permissible within the fixed bounds of jury consideration." *Taylor*, 464 F.2d at 243. Moreover, if the evidence "gives equal or nearly equal circumstantial support to a theory of guilt and a theory of innocence, then a reasonable jury must necessarily entertain a reasonable doubt." *Coplan*, 703 F.3d at 69. In other words, where the evidence is "in equipoise," a judgment of acquittal is required. *Id.*; *see also United States v. Glenn*, 312 F.3d 58, 70 (2d Cir. 2002); *United States v. D'Amato*, 39 F.3d 1249 (2d Cir. 1994).

## ARGUMENT

The verdicts on Count Three and Four of the Indictment must be set aside because they were not supported by substantial evidence of Mr. Albert's guilt beyond a reasonable doubt.

To carry its burden of proving beyond a reasonable doubt that Mr. Albert is guilty of Count Three, for conspiring to violate the Travel Act, the Government was required to prove:

> First: The existence of the charged conspiracy to violate the Travel Act, which prohibits the use of an interstate facility with intent to promote, manage, establish, or carry on an

7

unlawful activity, which in this case is the crime of bribery, in violation of New York Penal Code 200.00;

Second: That Mr. Albert knowingly and willfully became a member of the conspiracy; AND

Third: That at least one of the overt acts charged in the indictment or a substantially similar act was knowingly committed by at least one of the conspirators at or about the time and place alleged. *See* Tr. 547-556. *See also* 18 U.S.C. §§ 371 and 1952(a)(3).

To carry its burden of proving beyond a reasonable doubt that Mr. Albert is guilty of Count Four, for conspiring to distribute and possess with intent to distribute marijuana and buprenorphine, the Government was required to prove:

First: The existence of the charged conspiracy to distribute and possess with intent to distribute marijuana and buprenorphine; AND

Second: That Mr. Albert knowingly and willfully became a member of the conspiracy. *See*, Tr. 561-62: 22-25, 1-2. *See also* 21 U.S.C. §§ 846 and 841(b)(1)(D)-(b)(1)(E).

The Government's evidence failed on all accounts. The Government did not present credible evidence that the objects of the charged conspiracies were, in fact, bribery and the distribution of or possession with intent to distribute marijuana and buprenorphine. Evidence of the accomplishment of the substantive crimes of either count was, of course, not required for the jury to have found Mr. Albert guilty of conspiracy. *See United States v. Salinas*, 522 U.S. 52, 65 (1997); *see also* Tr. 561: 18-21. Though, it is common for evidence of completed substantive acts to be presented to prove that the objects of the conspiracies were, in fact, those charged. In

this case, the objects of the conspiracy *must* have been bribery for a finding of guilt on Count Three and distribution of or possession with intent to distribute controlled substances on Count Four. The Government failed to show specific agreement between Mr. Albert and anyone to achieve these specific unlawful objectives.

The Government characterized Mr. Albert's conduct as a "large-scale drug operation at Rikers Island," yet did not put forth evidence of any such "underground market." Tr. 483: 10-15.

The Government called two alleged co-conspirators as witnesses at Mr. Albert's trial—CO Legerme, who worked meal relief on 7B during the conspiracy period, and Ms. Burgess, Mr. Albert's wife. During CO Legerme's testimony, he admitted to being a drug dealer, paid by multiple inmates over many months to bring contraband into the facility. Tr. 132: 1-4. CO Legerme's story about a single dealing with Mr. Albert is unbelievable and not corroborated by evidence. First, CO Legerme testified that no other inmates approached him before Mr. Albert about bringing contraband into the jail, and that Mr. Albert, the supposed "leader in the house," willingly approached a relatively new CO with no experience moving contraband into the facility to do business with. Tr: 126-127: 1-7, 16-17. CO Legerme also claimed that he picked up a package for Mr. Albert, which according to notes from his initial meetings with the Government and Captain Ali Fayad's testimony had no odor, but on the stand, years later, clearly smelled of marijuana. Tr. 129: 2-5. He also maintained that withholding information about his criminal activity from his superiors at Rikers is not lying. Tr. 146: 13-25. When asked, "So if you don't tell your superiors that you were bringing in contraband, you don't consider that to be a lie?", CO Legerme responded, "Technically no, not if you're not asked." Tr. 146: 20-22. CO Legerme, who testified that *his* participation in a drug operation at Rikers involved lying and deceit and who, during his testimony, could not distinguish between a lie and the truth, is simply not a

9

credible witness, and none of his testimony helped the Government in its attempt to put forth sufficient evidence for a conviction on either count. *See* Tr. 147.

The power dynamic between CO Legerme and Mr. Albert calls his testimony even further into question. He was a corrections officer and Mr. Albert was an inmate. Mr. Albert acknowledges that a CashApp payment was made from Ms. Burgess to Legerme, but that is insufficient on its own to support a finding of guilt on Count Three or Count Four. Suspicion is not proof beyond a reasonable doubt. CO Legerme testified that he was desperate for money, and in his position, he had every resource to scam or manipulate Mr. Albert while he was housed in 7B. Mr. Albert may have been a particularly attractive target since he was known for doing other business at Rikers. CO Legerme had every incentive to break his oath to testify truthfully—the potential sentencing benefits of a cooperation agreement—just as he did in 2019 to break his oath as a CO to pocket some extra money.

The Government's other main witness, the only other witness who would have direct knowledge of any conspiracy of which Mr. Albert was a member, is Ms. Burgess. Ms. Burgess has known and been in an on-and-off romantic relationship with Mr. Albert since 1995. Tr. 161: 17-23. During the alleged conspiracy period, they were married and spoke on the phone daily about a variety of topics, including their son, their friends, her job, and their apartment. Tr. 153: 2-8. Ms. Burgess visited Mr. Albert at Rikers on the weekends, and often brought him packages that included items like clothes, newspapers, and drawing books. Tr. 163: 11; 197: 2-20. She knew him to be a talented artist who sold artwork like birthday and anniversary cards to other inmates for $25, $50, or $100. Tr. 196: 20-21; 203. Those sales made Mr. Albert a decent amount of money, and Burgess helped him facilitate these transactions through the use of her personal CashApp account. Tr. 203-04: 20-25, 1-8. Ms. Burgess also knew Mr. Albert to owe

debts to people on the street. Tr. 204: 16-17. Despite her daily involvement in Mr. Albert's financial dealings during the conspiracy period, using a CashApp account in her own name, she *never* believed he was involved in the sale or smuggling of drugs. *See* Tr. 215: 10-12. Ms. Burgess's testimony strongly cuts against the Government's assertions about the alleged objects of the conspiracies charged in Count Three and Four were.

Though the Government is not legally obligated to present any particular kind or category of evidence, there was much strikingly absent from its case. No witnesses testified about seeing, possessing, or even smelling drugs on Mr. Albert's person, in his cell, or with any of his alleged co-conspirators. No witnesses testified about hand-to-hand sales inside Rikers despite every inch of the facility being surveilled at all hours of the day. No witnesses testified about foot traffic around Mr. Albert's cell. If the Government's proffered narrative is true, pounds of drugs being moved into Rikers by corrections officers went completely undetected, despite an active and ongoing investigation by Captain Fayad and his team, which involved site surveys of alleged co-conspirators, witness interviews, the review of hundreds of recorded jail calls, and facility searches. Tr. 484: 5-9; 487-88: 20-25, 1-6. The record makes clear that the jury's evidentiary interpretations and conclusions were overly speculative. *See Blasini-Lluberas*, 169 F.3d at 62. Given the sheer lack of credible evidence, a reasonable jury could not have found that the Government proved beyond a reasonable doubt that Mr. Albert's business dealings had anything to do with influencing guards to smuggle in contraband.

Other incredible evidence presented by the Government was the testimony of Investigator Andrew Walker, who testified about the use of drug-related "code words." On cross-examination, Investigator Walker admitted that during meetings with the Government in preparation for trial, the Government offered him tips and suggestions on how to draft a new

11

resume, which was then shared with the defense. Tr. 497: 11-15. That fact raises immediate doubt as to his credibility and motivation. The recorded calls entered into evidence were nonsensical and vague, covering many topics and jumping from topic to topic. Investigator Walker failed to credibly explain their meaning, context, or purpose. The only people who could have credibly testified to those things were those involved, and none of those people were called to testify.

The Government also relied on CashApp transactions between Mr. Albert and former CO Robinson, a "significant player" in the alleged conspiracy. Not one witness testified to Robinson's knowledge or involvement because they could not. Not one witness knew the nature or circumstances of Mr. Albert's and CO Robinson's relationship. Not one witness knew that what she handed to Mr. Albert on Rikers surveillance footage was, in fact, contraband. What the Government was left with was CashApp transactions, which Mr. Albert conceded at trial are suspicious. However, suspicion is not sufficient to sustain a conviction under the law. The Government cherry-picked evidence in a convenient, yet woefully inadequate attempt to complete a picture with pieces of a puzzle that do not fit together.

The question in this case was whether the Government proved beyond a reasonable doubt that the objects of the conspiracies charged in Count Three and Four were bribery and the distribution of or possession with intent to distribute marijuana and buprenorphine, respectively. The Government's evidence was legally insufficient to sustain a conviction on Count Three and nonexistent with regard to Count Four.

Although the jury is left to evaluate witness credibility, weigh the evidence, and draw justifiable inferences, it does not have "carte blanche." *Blasini-Lluberas*, 169 F.3d at 62. There is a point at which the Court, pursuant to Rule 29, must act as a safeguard against convictions

based not on sufficient evidence, but only a "mere modicum" of evidence. *Jackson*, 443 U.S. at 320.

Viewing the evidence in its totality and drawing all reasonable inferences in favor of the Government here, the evidence at trial was insufficient to allow any rational juror to find beyond a reasonable doubt that Mr. Albert was a member of a conspiracy to violate the Travel Act or to distribute or possess with intent to distribute marijuana and buprenorphine.

## CONCLUSION

For the foregoing reasons, Mr. Albert respectfully requests the Court to grant his Motion, pursuant to Rule 29 of the Federal Rules of Criminal Procedure, and enter a judgment of acquittal on Counts Three and Four.

Dated: New York, New York
      January 6, 2023

Respectfully submitted,

ANTHONY CECUTTI
217 Broadway, Suite 707
New York, New York 10007
Ph: (212) 619-3730

KESTINE THIELE
217 Broadway, Suite 707
New York, New York 10007
Ph: (212) 542-3860

*Attorneys for James Albert*